UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROLANDO PALMER-SARDINAS (A022-772-042),

             Petitioner,

    v.

CHESTNUT,

             Respondent.

No.  1:26-CV-03520-DC-SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I.      Factual and Procedural History**

Petitioner, a 76-year-old citizen of Cuba, entered the United States as a refugee via a grant of parole in 1980.  ECF No. 7 at 9.  Between 1981 and 1986 he had a series of criminal arrests and convictions for carrying a concealed weapon, possession of cocaine, kidnapping, burglary, and larceny.  ECF No. 7 at 30-44.  Immigration officials revoked Petitioner's parole in 1986 and an Immigration Judge ("IJ") ordered Petitioner deported from the United States on December 18, 1989.  Id. at 13.  Neither party reserved appeal, so the order became final on that date.  Id.  The record is unclear as to the precise duration of Petitioner's time in immigration detention thereafter, but Petitioner alleges that immigration officials detained him "3 to 4 times" at various

1

points after the removal order.  ECF No. 1 at 3.  In 2001, immigration officials released Petitioner from detention, then placed him under an order of supervision in 2007.  ECF No. 7 at 9.

On March 10, 2026, the Las Vegas Metropolitan Police arrested Petitioner and charged him under Nevada Revised Statutes § 201.230, lewdness by person over 18 with a child less than 14, and § 200.508.1, child abuse or neglect.  ECF No. 7 at 28.  The charges remain pending.  Pursuant to an immigration detainer, ICE took Petitioner into custody two days later.  Id. at 8.  On March 18, 2026, ICE attempted to execute the 1989 removal order by sending Petitioner to Mexico "afoot" via the Nogales, Arizona port-of-entry ("POE").  ECF No. 7 at 47.  Petitioner claims that Mexico did not accept him because he did not consent to removal there and because he is too old and in poor health.  ECF No. 10-1 at 2.  Beyond a form where an unidentified officer signed a line next to "Departure witnessed by," ECF No. 7-1 at 50, Respondent did not file a declaration or other evidence concerning what transpired at the Nogales POE.  Respondent claims ignorance as to how and when Petitioner "returned" to the United States but admits that Petitioner remains in ICE detention.  ECF No. 7 at 2.

Petitioner filed a petition for writ of habeas corpus on May 7, 2026, alleging that his detention violates due process because there is no significant likelihood of removal in the reasonably foreseeable future, and that attempted removal to a third country would violate the Fifth and Eighth Amendments and the Administrative Procedures Act.  ECF No. 1.  Respondent countered that Petitioner's detention beyond the 90-day removal period is proper under 8 U.S.C. § 1231(a)(6) and that Petitioner has not met his burden to demonstrate that there is no reasonable likelihood of removal in the foreseeable future because he has not provided evidence that any potential country of removal will not accept him.  ECF No. 7.

After appointment of counsel, Petitioner filed an amended petition which reiterates his position that removal in the reasonably foreseeable future is unlikely and further alleges that removal to any other country would be in violation of the Fifth Amendment, the Convention Against Torture, and implementing regulations.  ECF No.10.  Respondent's amended answer emphasizes that Petitioner's current detention has lasted less than six months, requested that the Court take judicial notice of a "standing agreement" between Mexico and the United States to

accept Cuban nationals, and suggested that Petitioner refused to cooperate with removal, justifying continued detention under 8 U.S.C. § 1231(a)(1)(C).  ECF No. 14.

## II.    Legal Standards

The detention of noncitizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a).  "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022).  After this 90 day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'"  Arteaga-Martinez, 596 U.S. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).[1]  Detention beyond the 90-day removal period may also be extended if the noncitizen "fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspires or acts to prevent the [noncitizen's] removal."  8 U.S.C. § 1231(a)(1)(C).

The Supreme Court examined the constitutional limits of detention under § 1231(a)(6) in Zadvydas v. Davis, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]"  533 U.S. at 692 (2001).  Zadvydas read an implicit due process limitation into the immigration statute governing the removal of noncitizens subject to a final order of removal in order to avoid serious constitutional problems. The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary,

---

[1]  The record is unclear as to ICE's justification for detention under § 1231(a)(6).  Form I-213 alleges that Petitioner is deportable under INA § 237(a)(2)(A)(i) (8 U.S.C. § 1227(a)(2)(A)(i)) for having been convicted of a crime involving moral turpitude within five years of admission.  ECF No. 7 at 8.  However, there is no evidence of Petitioner ever having been admitted to the United States.  Respondent's answer implies that Petitioner is inadmissible pursuant to 8 U.SC § 1182. See id. at 2, lines 25-26.  The undersigned will assume Respondent is referring to 8 U.S.C. § 1182(a)(2)(A)(i) for having been convicted of a crime involving moral turpitude at any time.

3

or permanent." Zadvydas, 533 U.S. at 693. As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699. In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six-month period of detention. Id. at 701. If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

Regulations issued by the Department of Homeland Security ("DHS") in the wake of Zadvydas require internal review of the ongoing detention of a noncitizen who has a final removal order. See Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 2001 WL 1408247 (Nov. 14. 2001). After the 90-day removal period has expired, a noncitizen may request a review of whether there is a "significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). If it is determined that there is no significant likelihood of removal in the reasonably foreseeable future, the government "shall promptly make arrangements for the release of the [noncitizen] subject to appropriate conditions." 8 C.F.R. § 241.13(g)(1). The specific conditions of supervision are described in INA § 241(a)(3) and 8 C.F.R. § 241.5. See 8 C.F.R. § 241.13(h)(1).

**III.    Analysis**

**A.  Petitioner's Detention is Not Presumptively Reasonable**

Petitioner's most recent period of ICE custody began on March 12, 2026, more than four months ago. Prior to March 2026, but after the 1989 removal order, Petitioner had been detained "3 to 4 times" (ECF No. 1 at 3) for an aggregate of more than two years. ECF No. 10 at 9.[2] The undersigned finds that these prior periods of post-final order detention should be aggregated with the current period of detention in determining whether Petitioner remains within the presumptively reasonable six-month period. See Nguyen v. Scott, 796 F.Supp.3d 703, 721-22

---

[2] Though the record lacks specific dates and corroboration for these claimed periods of prior detention, Respondent makes no attempt to rebut Petitioner's claims regarding prior detention.

4

(W.D. Wash. 2025) (adding prior periods of detention to current period of detention in order to determine whether the petitioner's detention remained presumptively reasonable); Sied v. Nielsen, No. 17-cv-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (explaining that "the six-month period does not reset when the government detains a[ ] [noncitizen] ..., releases him from detention, and then re-detains him again."); Chen v. Holder, No. 6:14-cv-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015) (finding that "[s]urely, under the reasoning of Zadvydas, a series of releases and re-detentions by the government ... while technically not in violation of the presumptively reasonable jurisprudential six month removal period, in essence results in an indefinite period of detention, albeit executed in successive six month intervals"). Petitioner's aggregate post-final order detention of over two years is not presumptively reasonable. Zadvydas, 533 U.S. at 701.

### B. Even if Within a Presumptively Reasonable Duration, Petitioner's Detention Has Become Unreasonable

Even if the Court were to consider only the current period of more than four months of detention, this would not foreclose a claim that Petitioner's detention is unlawful under Zadvydas. "Zadvydas did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, since interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention only for a period consistent with the purpose of effectuating removal." Clark v. Martinez, 543 U.S. 371, 384 (2005) (citing Zadvydas, 533 U.S. at 697-99); see also Uzzhina v. Chestnut, No. 1:25-cv-01594-DAD-SCR, 2025 WL 3458787, *3 n. 3 (E.D. Cal. Dec. 2, 2025) ("The fact that a noncitizen has been held in-custody less than six months does not foreclose a claim that his or her detention is unlawful under Zadvydas."); Trinh v. Homan, 466 F.Supp.3d 1077, 1092 (C.D. Cal. 2020) (explaining that "[a]t no point did the Zadvydas Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period"); Medina v. Noem, 794 F. Supp. 3d 365, 375 (D. Md. 2025) (noting that "what Zadvydas did make clear was that it was adopting a presumption— not a conclusive bar to adjudication of whether continued detention is authorized that lifts only

after six months have elapsed"); Vijdani v. Mattos, No. 2:25-cv-02496-GMN-EJY, 2026 WL 560209, at *3-4 (D. Nev. Feb. 27, 2026) (collecting cases concluding the same).  Here, even if the prior periods of detention were disregarded, Petitioner has overcome the presumption of reasonableness under Zadvydas.  Immigration authorities have been unable to remove Petitioner to Cuba since the 1989 removal order, and they were equally unsuccessful in their recent attempt to remove him to Mexico.  There is nothing in the record to suggest that removal will somehow be effectuated after his current period of detention reaches six months.

**C.  No Significant Likelihood of Removal in the Reasonably Foreseeable Future**

Petitioner has met his burden of establishing a "good reason to believe" that there is no significant likelihood of his removal in the reasonably foreseeable future.  Petitioner alleges, and Respondent does not refute, that in the 37 years since the 1989 removal order, Respondent has been unsuccessful in effectuating removal to Cuba.  As to removal to Mexico, Petitioner has presented unrefuted evidence that Mexico did not accept him.  ECF No. 10-1.  The burden therefore shifts to Respondent to rebut Petitioner's showing.  Zadvydas, 533 U.S. at 701.

There is no countervailing evidence in the record to demonstrate a reasonable likelihood of Petitioner's removal to either Cuba or Mexico in the reasonably foreseeable future.  Petitioner has provided evidence that Cuba, despite agreeing to the repatriation of some Cuban nationals, has been uncooperative in accepting its nationals for removal.  ECF No.10 at 3. Respondent provided no evidence to demonstrate that Cuba would now be willing to accept Petitioner, and their attempt to remove Petitioner to Mexico several months ago implies that they do not foresee effectuating removal to Cuba.

Upon Respondent's request, the undersigned takes judicial notice of a "standing agreement" between the United States and Mexico for Mexico to accept Cuban nationals for removal from the United States.  See ECF No. 14 at 2.  However, the existence of such agreement does not demonstrate that Mexico would be willing to accept Petitioner.  On the contrary, Petitioner has stated – and Respondent provides nothing to specifically refute – that Mexico explicitly refused to accept him.  ECF No. 10-1 at 2.  Based on the scant record evidence, the

6

undersigned concludes that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future.

### D.  8 U.S.C. § 1231(a)(1)(C) Does Not Authorize Petitioner's Continued Detention

By noting that refusal to cooperate with removal to Mexico would authorize continued detention under 8 U.S.C. § 1231(a)(1)(C), Respondent implies – but not does exactly allege – that Petitioner has not cooperated with Respondent's efforts to remove Petitioner to Mexico.  ECF No. 14 at 2.  Respondent provided no evidence that Petitioner has failed or refused to make timely, good faith efforts for travel documents or has conspired to prevent removal.  See 8 U.S.C. § 1231(a)(1)(C).  While Petitioner has expressed a general desire not to be removed to Mexico, the record contains no evidence that Petitioner engaged in "intentionally obstructionist, bad faith tactics ... designed to frustrate the government's attempts to effectuate a removal order[.]"  Diouf v. Mukasey, 542 F.3d 1222, 1231 (9th Cir. 2008).  Therefore, § 1231(a)(1)(C) does not justify Petitioner's continued detention.

### IV.    Conclusion

Petitioner has sufficiently established that his removal is not reasonably foreseeable and that his ongoing detention is therefore not reasonably necessary to secure his removal.  See Zadvydas, 533 U.S. at 699–700

Accordingly, IT IS HEREBY RECOMMENDED that

1.  Petitioner's application for a writ of habeas corpus be GRANTED on claim 1.[3]

2.  Respondent be ordered to immediately release Petitioner Rolando Palmer-Sardinas (A# 022-772-042) under conditions of supervision dictated by applicable statutes and regulations.

3.  The Clerk of Court be directed to serve the California City detention facility with a copy of any final order granting release.

4.  Respondent shall not re-detain Petitioner unless and until they comply with all

---

[3]  In the interests of judicial economy, and in light of the recommended relief, the remaining claims are not addressed herein.

procedures set forth in 8 C.F.R. § 241.13(i) and any other applicable statutes and regulations.

5. Judgment be entered in Petitioner's favor and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 15, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

8